**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| _____ | | |
| CHARLIE PLUNKETT, *et al.,* | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | 1:14-CV-326 (ESH) |
| | ) | |
| JULIAN CASTRO, in his capacity as | ) | |
| SECRETARY OF THE | ) | |
| UNITED STATES DEPARTMENT OF | ) | |
| HOUSING AND URBAN DEVELOPMENT, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

**PLAINTIFFS' RENEWED MOTION FOR CLASS CERTIFICATION**

Plaintiffs respectfully renew their Motion for Class Certification based on evidence that, prior to issuing a decision on remand, HUD has affirmatively refused to pay interest to lenders who seek to delay foreclosure on surviving spouses pending HUD's final determination on remand. This is a clear violation of the law, and letting it stand will result in imminent harm to surviving spouses who face foreclosure.

In October, Plaintiffs filed their Motion for relief from judgment, along with evidence showing that HUD was refusing to do in practice what it said was "automatic" before this Court – allow lenders to hold off on foreclosures on Plaintiffs and ultimately assign the reverse mortgage loans to HUD. Since then, it has become clear that, even prior to issuing a determination on remand, HUD is *insisting* that lenders foreclose against surviving spouses and is penalizing those who fail to follow the foreclosure regulation deadlines HUD itself has said do not apply to such mortgages. HUD's affirmative directive to lenders to deny relief under the Trigger Applicability Decision ("TID") is sealing the fate of vulnerable surviving spouses. .

These actions, taken prior to a decision on remand, make it abundantly clear that class certification is not premature, it is essential.

**Background**

Throughout this case, Plaintiffs have repeatedly brought to the Court's attention the need for class certification and injunctive relief.  Each time, HUD has made some small accommodation that has persuaded the Court that these steps were unnecessary.  When Plaintiffs supplemented their motion for preliminary injunction with information demonstrating that it was HUD, not HECM servicers, that was insisting on foreclosure, HUD promptly issued the 60-day extension. Dkt. Nos. 19 20, 20-1. In their June 6, 2014 Status Report, Plaintiffs alerted the Court to the fact that many prospective class members were being denied the 60-day extension because HECM servicers did not know it existed or did not understand it.  Dkt. No. 27, with attached Declarations. The Court then directed HUD to issue clarification to servicers on the availability of the 60-day extensions.  Dkt. No. 29.  In its summary judgment briefing, HUD stated that the TID relief was not a voluntary action on its part, but was the "automatic" and "sole necessary consequence" of this Court's decision in *Bennett II*  and that, as a result, Plaintiffs' mortgages were not due and payable. Dkt. No. 44 at 4, 8.  Plaintiffs renewed their motion for class certification, because it was clear that there was no legal basis for denying other surviving spouses whose spouses' mortgages were not due and payable relief under the TID. Dkt. No. 42.

In its Memorandum Opinion in this case, the Court made clear that HUD's regulation at 24 C.F.R. § 206.27(c) is illegal as applied not only to the *Bennett* and *Plunkett* plaintiffs, but to **all** surviving spouses of reverse mortgage borrowers, and characterized HUD's contention that it was so limited as "disingenuous."  Mem. Op. at 30.  In remanding the case to HUD, the Court observed that it saw "no reason why an 'automatic' rule is only automatic at the moment an

individual sues HUD . . ." *Id.* at 31. The Court ultimately denied class certification without prejudice as premature "because HUD now has the opportunity to consider the application of the TID in the first instance on remand, including whether the TID applies to all non-borrower surviving spouses." *Id.* at 32.

As Plaintiffs' motion for post-judgment relief made clear, HUD had done nothing in the more than two months since then to ensure TID protection for Plaintiffs.  The Court ordered HUD to propose a letter on the TID to send to Plaintiffs' mortgagees.  But the proposed letter will only apply to six people.[1]  HUD's actions even as to the limited application of the TID to them have sown confusion and mayhem for lenders and surviving spouses at every turn with one contradictory statement after another.

### Argument

It has now become clear that without bothering to issue a decision on remand, HUD *is affirmatively compelling* lenders to deny TID relief to other surviving spouses, and penalizing lenders if they fail to foreclose according to regulations HUD has said *do not* apply to mortgages that are not due and payable under HUD's regulations and insurance contract. Two examples demonstrate this.

### *Ernestine Harris*[2]

Ernestine Harris is a 65 year-old surviving spouse of a HECM borrower. Mrs. Harris, who is legally blind, and has lived in her home in Atlanta, Georgia for thirty-nine years. Scott

---

[1] As this Court is aware, Plaintiffs have objected to the proposed letter because, as detailed in their Reply, it imposes time constraints and substantive conditions on relief HUD has said was not a voluntary action on its part but was the automatic and sole necessary consequence of this Court's decision in *Bennett II.*

[2] J. Rachel Scott, attorney for Mrs. Harris, submitted an earlier Declaration in this case,, in which she described the enormous challenges she, as an attorney, faced in seeking a 60-day extension of Mrs. Harris's foreclosure.  Dkt. No. 27-8.

Decl. ¶¶ 3,4.  The loan servicer, OneWest, had scheduled a foreclosure on her home for October 7, 2014.  Scott Decl. ¶ 7.

Mrs. Harris's attorneys from Atlanta Legal Aid filed a complaint and motion for temporary restraining order in federal court in Georgia. Scott Decl.¶ 7. The Georgia federal court agreed with this Court that HUD's regulation at 24 C.F.R. § 206.27(c) is illegal.  However, because the mortgage gives the lender the right to foreclose, the Court reluctantly denied the spouse's motion for a temporary restraining order.  Scott Decl. ¶ 9. A transcript of that ruling is attached. Exhibit A.

In the course of that hearing, OneWest indicated its willingness to stay foreclosure on Mrs. Harris if HUD would agree to suspend the curtailment of interest on the loan. Scott Decl. ¶ 10.  HUD counsel Carol Federighi, who attended the hearing via telephone, recommended that OneWest submit a request to HUD to waive the foreclosure deadlines (in 24 C.F.R. § 206.125) and suspend the curtailment of debenture interest so that OneWest would not be forced to foreclose on Mrs. Harris. Scott Decl. ¶ 10.  Section 206.125 is the same regulation that HUD has said in this case did not apply to a loan that is not due and payable pursuant to a regulation that has been found illegal as applied to that loan. Dkt. 37-1 at 23-24.

OneWest submitted a written waiver request one day before the scheduled foreclosure. Exhibit B.  When HUD did not respond by close of business that day, OneWest agreed to postpone the October 7th foreclosure sale until December 2, 2014.  Scott Decl. ¶ 11.

In a letter dated October 16, 2014, HUD Associate Deputy Assistant Secretary, Kathleen A. Zadareky refused the request, and went so far as to fault OneWest for postponing the sale of Mrs. Harris's home.  This is same HUD representative who filed a declaration stating that HUD's statement to Plaintiffs' lenders that HUD would not accept assignment of the mortgages

4

was a misunderstanding.  *See* Dkt. Nos. 20-2; 50-1, HUD states, "This election was not the result

of any impediment to foreclosure or any other good cause for which waivers are granted."

Exhibit C; Scott Decl. ¶ 12.  The foreclosure on Mrs. Harris's home is still scheduled for

December 2.  Scott Decl. ¶ 13.

Mrs. Harris has remained current in her tax and insurance payments.  She has not raised

any claims that could invalidate the mortgage.

### *Janice Cooper*

Janice Cooper is a 73 year-old federal government retiree and surviving spouse of a

HECM borrower who has lived in her home in Anaheim, California for 34 years.[3]  Cooper Decl.

¶ 1.She has severe heart disease; she has a registered service dog that assists her as necessary.

Her only income is from Social Security.

After Mrs. Cooper's husband's death early this year, OneWest sent her a Notice of

Default and Election to Sell Under Deed of Trust, which asserted that it would start foreclosure

proceedings after 90 days.  Dkt. No. 27-2.  Ms. Cooper has been unable to find an attorney to

represent her, but she has followed closely the developments in this case and has been in

frequent contact with Plaintiffs' counsel. Cooper Decl. ¶4. She sought and was eventually given

the 60-day extension. Cooper Decl.¶ 5.  After the Court's decision in this case, she applied for

Mortgagee Optional Relief.  Cooper Decl. ¶ 6.  She was originally told would be eligible for this

relief, but it was ultimately denied.  Cooper Declaration at ¶ 6

Since then, Mrs. Cooper has called OneWest every week to find out if the foreclosure

date had been reset. Cooper Decl. ¶ 7.  On October 24, 2014, OneWest assured her it had not

been reset.  A few days later, she was advised that the sale was set for December 1, 2014.

---

[3] Mrs. Cooper submitted an earlier Declaration in this case.  Dkt. No. 27-2.

Cooper Decl. ¶ 8.Ms. Cooper has remained current in her tax and insurance payments.  She has

not raised any claims that could invalidate the mortgage.  Cooper Decl. ¶ 9.

These are not isolated cases.  They are the tip of an iceberg, the size of which is

unknown. Counsel for Plaintiffs have been fielding calls like this since they started investigating

this case in 2010, and filed the *Bennett* complaint in 2011.   Plaintiffs seek to represent a class of

all HECM surviving spouses.    HUD has repeatedly and unjustifiably sought to treat other

surviving spouses differently from Plaintiffs, whose situations are indistinguishable from theirs.

*See* Dkt. 52 at 2 (". . . defendant emphasizes that the conditions [for offering the TID] described

in Exhibit 1 are *sui generis* to the HECMs affecting these six plaintiffs."). But, as the Court

found:

> It is well-established that "an agency must treat similar cases in a
> similar manner unless it can provide a legitimate reason for failing to
> do so." *Indep. Petroleum Ass'n of Am. v. Babbitt*, 92 F.3d 1248, 1258
> (D.C. Cir. 1996); *Transactive Corp. v. United States*, 91 F.3d 232,
> 237 (D.C. Cir. 1996); *Nat'l Ass'n of Broadcasters v. FCC*, 740 F.2d
> 1190, 1201 (D.C. Cir. 1984); *Etelson v. Office of Pers. Mgmt.*, 684
> F.2d 918, 926 (D.C. Cir. 1982) ("Government is at its most arbitrary
> when it treats similarly situated people differently."); *Doubleday
> Broad. Co. v. FCC*, 655 F.2d 417, 423 (D.C. Cir. 1981) (it is arbitrary
> and capricious to "decid[e] a case one way today and a substantially
> similar case another way tomorrow without a more reasonable
> explanation").

Mem. Op. at 30.

It is now clear that HUD is taking affirmative action to ensure that lenders do not offer

the TID to other surviving spouses whose mortgages are not due and payable under its

regulations, and is penalizing them if they do not do so.  Indeed, two days ago, HUD filed a

document with the Court stating, "For reasons previously articulated, HUD reserves the right to

attach, different, perhaps more stringent conditions to any remedy it may elect to provide to other

non-borrowing spouses."  Dkt. No. 56 at 1.  This is plainly contrary to HUD's own interpretation

of the law.  In the absence of a determination on remand, HUD's affirmative rejection of the efforts of lenders to allow elderly spouses such as Mrs. Harris and Mrs. Cooper to remain in their homes is not just a profound injustice but a defiance of this Court's instruction to determine the eligibility of other surviving spouses for this relief. HUD's rejection of the TID, in the absence of a decision on remand, makes clear that class certification is **not** premature but necessary to save the homes of surviving spouses.

Dated:  November 7, 2014

Respectfully submitted,

/s/ *Jean Constantine-Davis*
Jean Constantine-Davis (D.C. Bar No. 250084
(jcdavis@aarp.org)
AARP Foundation Litigation
601 E Street NW
Washington, DC 20049
Tel:  202-434-2060
Fax: 202-434-6424

Craig L. Briskin (D.C. Bar No. 980841)
cbriskin@findjustice.com
Steven A. Skalet (D.C. Bar No. 359804)
(sskalet@findjustice.com)
Mehri & Skalet, PLLC
1250 Connecticut Avenue NW
Suite 300
Washington, DC 20036
Tel:  202-822-5100
Fax:  202-882-4997

*Counsel for Plaintiffs*