## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____
)
**CHARLIE PLUNKETT,** *et al.***,**                          )
)
        **Plaintiffs,**                                  )
)
        **v.**                                             )   **Civil Action No. 14-cv-326 (ESH)**
)
**JULIÁN CASTRO, in his official capacity as**      )
**SECRETARY OF THE DEPARTMENT**               )
**OF HOUSING AND URBAN DEVELOPMENT** )
)
        **Defendant.**                                   )
_____ )

## MEMORANDUM OPINION AND ORDER

Plaintiffs have moved to amend or vacate the Court's judgment that was entered on August 28, 2014, in *Plunkett v. Castro*, No. 14-cv-326, 2014 U.S. Dist. LEXIS 119805 (D.D.C. Aug. 28, 2014). (Pls.' Mot. for Relief Under Rule 59(e) or, Alternatively, Rule 60(b) [ECF No. 49] ("Pls.' Mot.").) For the reasons given below, plaintiffs' motion will be denied.

## BACKGROUND

The background of this case was discussed at length in this Court's original Opinion in *Plunkett*, *see* 2014 U.S. Dist. LEXIS 119805, at *3-15, and by the Circuit Court and this Court in the related case of *Bennett v. Donovan*, *see* 703 F.3d 582, 584-86 (D.C. Cir. 2013); 4 F. Supp. 3d 5, 7-8 (D.D.C. 2013), so the Court will limit its discussion to the relevant procedural history and facts.

Plaintiffs in both *Bennett* and *Plunkett* are widowed spouses of holders of home equity conversion mortgages ("HECMs"), also known as reverse mortgages, who were neither listed on the deeds to their spouses' homes nor on the HECMs that their spouses had signed. 2014 U.S. Dist. LEXIS 119805, at *6. In accordance with a regulation promulgated by the Department of

Housing and Urban Development ("HUD"), 24 C.F.R. § 206.27(c), those HECM loans became due and payable upon the death of the spouse mortgagors. *Id.* In *Bennet*, plaintiffs filed suit claiming that 24 C.F.R. § 206.27(c)(1) violated federal law by failing to protect non-mortgagor spouses. This Court ultimately agreed and concluded that 12 U.S.C. § 1715z-20(j) unambiguously foreclosed HUD's interpretation in 24 C.F.R. § 206.27(c)(1). *See Bennett*, 4 F. Supp. 3d at 12. The Court remanded to the agency to fashion appropriate relief. *Id.* at 15. Several months later, four non-borrowing spouses filed the *Plunkett* lawsuit on behalf of themselves and a purported class of similarly situated individuals, mounting the same challenge to 24 C.F.R. § 206.27(c)(1). (Compl. [ECF No. 1].)

HUD issued its first determination on remand on June 4, 2014, concluding that the *Bennett* plaintiffs were not entitled to any relief. *Plunkett*, 2014 U.S. Dist. LEXIS 119805, at *9. That decision did not consider the appropriate remedy for other non-borrowing spouses, and so this Court remanded the *Plunkett* plaintiffs' case to the agency for review. On June 24, 2014, HUD issued a second determination on remand, which was limited to the *Bennett* plaintiffs and the named *Plunkett* plaintiffs. That decision introduced a new, voluntary remedy, known as the Mortgagee Optional Election ("MOE"), which permitted mortgagees to assign HECMs to HUD if the mortgages met certain criteria. *See id.* at *12-13.

The parties subsequently filed cross-motions for summary judgment. In that briefing, HUD identified a remedy not previously considered in its determination on remand: that "the effect of the Court's decision [in *Bennett*] and statements invalidating the application of 24 C.F.R. § 206.27(c)(1) to plaintiffs is that 24 C.F.R. § 206.125 is not triggered as a result of their spouses' death." (Mem. in Supp. of Def.'s Mot. to Dismiss or, in the Alternative, for Summ. J.

[ECF No. 37-1] ("Def.'s SJ Mem.") at 2.)  The Court dubbed this remedy the Trigger

Inapplicability Decision ("TID") and explained its consequences as follows:

> [Under the TID,] the relationship between HUD and the mortgagee does not
> change as a result of the death of the borrowing spouse and the mortgagee may
> continue to hold on to the reverse mortgage . . . without instituting foreclosure.
> Then, if the loan reaches 98% of the maximum loan amount, the mortgagee may
> assign the mortgage to HUD.

*Plunkett*, 2014 U.S. Dist. LEXIS 119805, at *39-40.  To give effect to the TID, "HUD . . .

informed the lenders holding the HECMs of each of the six named plaintiffs by e-mail that they

did not need to foreclose until another triggering event occurred." *Id* at *15.

   Ultimately, this Court held that the MOE "is an entirely reasonable program" that was not

arbitrary or capricious.  *Id.* at *32.  The Court also held that HUD had not acted arbitrarily or

capriciously in interpreting its authorizing statute as not giving it the power to compel immediate

assignment of the HECMs.  *See id.* at *37-38.  Finally, the Court held that HUD had acted

arbitrarily and capriciously in "not fully considering the TID in its final agency action." *Id.* at

*49.  Accordingly, the Court remanded with instructions that HUD should "consider whether the

remedy of the TID applies to non-borrower surviving spouses." *Id.*  The Court also denied class

certification without prejudice.  *See id.* at *50.

   In their present briefing, plaintiffs explain that, in the wake of *Plunkett*, their counsel

"contacted the mortgagees on the respective mortgages requesting that the mortgagees agree to

hold the mortgages until they reach 98% of the maximum claim amounts."  (Mem. of Law in

Supp. of Pls.' Mot. for Relief Under Rule 59(e) or, Alternatively, Rule 60(b) [ECF No. 49-1]

("Pls.' Mem.") at 3-4.)  One of plaintiffs' mortgagees stated in an e-mail that it did not "concur

with [plaintiffs'] conclusion that HUD has affirmed that the . . . mortgage is no longer due and

payable" and that "the threshold issue is whether [plaintiff] can meet all of the [MOE] factors."

(Pls.' Mot., Ex. 1 [ECF 49-3].)  A representative from a different one of plaintiffs' mortgagees stated that he had been in contact with a HUD official, Sally Bené, who had "told him that she had been given explicit instructions from the General Counsel's Office that HUD would not accept assignment of Plaintiffs' mortgages once they reached 98% of maximum claim amounts unless Plaintiffs could also meet the five [MOE] factors."  (Decl. of Jean Constantine-Davis [ECF 49-2] ("Davis Decl.") at 3.)  After receiving these communications, on September 10, 2014, plaintiffs' counsel contacted defendant's counsel "seeking an explanation."  (Pls.' Mem. at 4.)  Defendant's counsel subsequently responded by e-mail, stating:

> HUD is currently working out the details of how [the TID] option will be implemented as to any individuals to whom it will apply. As you know, the TID will apply to the named plaintiffs.  However, at this time, HUD has not finalized the details of implementation as to the named plaintiffs.  To the extent that the mortgagees received information from Sally Bené regarding such details, that information does not represent HUD's final decision as to how the TID will be implemented.

(Pls.' Mot., Ex. 4 [ECF 49-3].)

On September 25, 2014, plaintiffs filed this motion to amend or vacate the judgment in *Plunkett*.  Their stated objective is to obtain an "Order . . . mak[ing] clear that HUD committed to accepting assignment of the mortgages of the named Plaintiffs' spouses when they reach 98% of their maximum claim amounts, and to restrain HUD from failing to keep this commitment."  (Pls.' Mem. at 1.)  Plaintiffs argue that "HUD's actions since this Court's [*Plunkett*] decision effectively retract the representations it made to this Court about the application of the TID to Plaintiffs, on which the Court relied in issuing its decision."  (*Id.* at 6.)  They contend that "[e]ven if HUD's back channel communications with mortgagees are not its final decision on remand, . . . they unquestionably undermine the TID rule as plainly articulated by HUD in its pleadings."  (*Id.*)

4

In its opposition, defendant maintains that "HUD has stated that the TID will apply to the six named plaintiffs, although the loans must still meet all the other normal prerequisites for assignment."  (Def.'s Opp to Pls.' Mot. for Relief Under Rule 59(e) or, Alternatively, Rule 60(b) [ECF No. 50] ("Def.'s Opp.") at 3 (internal quotation marks and alterations omitted).) Defendant explains that "[h]ow those 'normal prerequisites' apply in the novel circumstances where the borrower on the loan is deceased and a nonparty to the loan contract . . . wishes to stay on in the house is not self-evident and requires extensive consideration of numerous legal and financial concerns."  (*Id.* at 3-4.)  Defendant calls the statements of Sally Bené a "misunderstanding" and asserts that such "[a] misunderstanding does not warrant the extraordinary relief plaintiffs request in this motion."  (*Id.* at 4.)

To clarify HUD's position, this Court issued an Order directing defendant to draft a proposed letter to plaintiffs' mortgagees stating

> (1) whether HUD will accept assignment of plaintiffs' spouses' mortgages when the balances on those mortgages reach 98% of their maximum claim amounts, if the mortgages are not due and payable for any reason other than the death of plaintiffs' spouses; and, if so,
> (2) specify what "normal prerequisites" must be met for them to be so assignable. In so doing, HUD should explain that Ms. Sally Bené's statement that "'HUD would not accept assignment of Plaintiffs' mortgages once they reached 98% of maximum claim amounts unless Plaintiffs could also meet the five Mortgagee Optional Election factors' is not HUD's policy with regard to the Plaintiffs."

*Plunkett v. Castro*, No. 14-cv-326 (D.D.C. Oct. 10, 2014) (citations omitted) (quoting Def.'s Opp. at 3; Decl. of Kathleen A. Zadareky [ECF No. 50-1] ("Zadareky Decl.") at 2.).

Defendant complied with the Court's request, submitting a ten-page letter instructing mortgagees that they could "enforce the HECM loan as originated and proceed to foreclosure" or that they could "elect one of two amendments to the contract of insurance to provide for a deferral of a due and payable status as a result of the death of the last surviving mortgagor – the

[MOE] or the Hold Election (HE)."  (Proposed FHA Letter [ECF No. 52-1] ("Proposed Letter")

at 1.)  The Hold Election ("HE") is defendant's newly coined term for the TID, which this Court

will adopt.  According to the Proposed Letter, mortgagees would need to elect whether to

proceed under the MOE or the HE by November 10, 2014, and the requirements spelled out in

the Letter would need to be satisfied by December 10, 2014, for the mortgage to be eligible for

assignment.  (*Id.* at 1-2.)  The Proposed Letter provides substantial details about the

implementation of the HE.  Under the HE, "the mortgagee may hold the HECM loan . . .  until

the death of the Non-Borrowing Spouse, the Non-Borrowing Spouse ceases to satisfy the

conditions and requirements [explained in the Proposed Letter], or the occurrence of an event –

other than the death of the last surviving mortgagor – that causes the HECM to be eligible to be

called due and payable."  (*Id.* at 4.)  The requirements for a mortgage to be eligible for the HE

include: (1) "the loan must not be eligible to be called due and payable for any reason (*e.g.*,

taxes, insurance, property charges) other than the death of the borrower spouse"; (2) "the Non-

Borrowing Spouse must have an ownership, leasehold, or other legal right to remain in the

property, must physically reside at the property, and must continue to reside, uninterrupted, at the

property for the balance of his or her natural life"; (3) "the Non-Borrowing Spouse must provide

proof that he or she was married to the deceased borrower at the time of the origination of the

HECM and must have remained married to the same until the death of the HECM mortgagor");

and (4) "there can be no outstanding asserted claims by the borrower's estate, the Non-

Borrowing Spouse, or any heir that could invalidate the HECM, or any such claims must have

been judicially resolved in favor of the mortgagee."  (*Id.*)  Plaintiffs lodged numerous objections

to defendant's Proposed Letter.  (Pls.' Reply in Further Supp. of Their Mot. for Relief Under

Rule 59(e) or, Alternatively, Rule 60(b), and Objections to Defendant's Proposed Letter [ECF

No. 53] ("Pls.' Reply").)  After successfully requesting this Court's leave, defendant filed a surreply.  (Def.'s Surreply Responding to Pls.' Objections to Def.'s Proposed Letter [ECF No. 55] ("Def.'s Surreply").)

## ANALYSIS

"A Rule 59(e) motion is discretionary and need not be granted unless the district court finds that there is an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Dyson v. District of Columbia*, 710 F.3d 415, 420 (D.C. Cir. 2013) (quoting *Ciralsky v. C.I.A.*, 355 F.3d 661, 671 (D.C. Cir. 2004)) (internal quotation marks omitted).  Rule 59(e) motions "are disfavored and relief from judgment is granted only when the moving party establishes extraordinary circumstances." *Niedermeier v. Office of Baucus*, 153 F. Supp. 2d 23, 28 (D.D.C. 2001).

Under Rule 60(b), "the court may relieve a party . . . from a final judgment, order, or proceeding" for a variety of reasons,  including "fraud . . . , misrepresentation, or misconduct by an opposing party," or "any other reason that justifies relief."  Fed. R. Civ. P. 60(b).  "Where . . . fraud is claimed as the basis for relief, the movant bears the burden of (1) proving the fraud by 'clear and convincing evidence' and (2) establishing that the fraud caused him 'actual prejudice' by preventing a full and fair presentation of the case."  *Crummey v. Soc. Sec. Admin.*, 857 F. Supp. 2d 117, 119 (D.D.C. 2012).

Plaintiffs' requests for relief under Rules 59(e) and 60(b) arise from the same factual allegation: that, during summary judgment briefing, HUD represented to this Court that "it would accept assignment" of plaintiffs' spouses' mortgages "when they reach 98% of their maximum claim amounts," but that HUD subsequently "retract[ed] [that] representation[]" via "communications to lenders."  (Pls.' Mem. at 1, 5-6.)  With respect to Rule 59(e), plaintiffs

contend that "HUD's . . . position . . . [that] the [TID] is now no longer automatic to the named

Plaintiffs is an extraordinary circumstance that will result in manifest injustice." (*Id.* at 2.)  With

respect to Rule 60(b), plaintiffs argue that "HUD's revocation of its commitment" amounts to

"[f]raud and circumvention in obtaining a judgment."  (*Id.* at 2-3.)

    Defendant's subsequent statements, however, have made clear that HUD will honor its

commitment to offer plaintiffs the HE remedy.  To be sure, plaintiffs have produced evidence

that at least one HUD official made a statement that was inconsistent with HUD's position in the

*Plunkett* litigation.  (*See* Davis Decl. at 3 ("Mr. Pitzner advised me that Sally Bene told him that

she had been given explicit instructions from the General Counsel's Office that HUD would not

accept assignment of Plaintiffs' mortgages once they reached 98% of maximum claim amounts

unless Plaintiffs could also meet the five Mortgagee Optional Election factors.").)  Defendant,

however, has repeatedly assured this Court that that statement made by Sally Bené "is not

HUD's policy with regard to the Plaintiffs and was not HUD's policy at the time it was allegedly

made." (Zadareky Decl. at 2.)  The Proposed Letter that will be sent to plaintiffs' mortgagees

further bolsters defendant's position.  The Letter makes clear that the mortgagee may,

notwithstanding the death of the mortgagor, hold the HECM loan until it "reaches 98% of the

[maximum claim amount]," so long as the loan does not enter default for any other reason.

(Proposed Letter at 4.)  And, contrary to the statement made by Sally Bené, the Proposed Letter

does not impose the five MOE factors as prerequisites for assignment pursuant to the HE; in

particular, the non-borrowing spouse need not meet the Principal Limit Factor test.  (*Compare*

Proposed Letter at 2, *with id.* at 4.)  In short, the Court finds plausible the explanation offered by

defendant that the statement made by Sally Bené was a "misunderstanding," albeit one that

caused substantial confusion amongst plaintiffs' mortgagees.  (*See* Def.'s Opp. at 4.)  HUD's

position, which is embodied in its briefing, its declaration by counsel, and its Proposed Letter, is

that plaintiffs' mortgagees may continue to hold plaintiffs' spouses' mortgages and that those

mortgages will be eligible for assignment when their values reach 98% of the maximum claim

amount so long as no other default event occurs.  This is consistent with defendant's

representation to this Court during summary judgment that "the effect of the Court's decision [in

*Bennett*] and statements invalidating the application of 24 C.F.R. § 206.27(c)(1) to plaintiffs is

that 24 C.F.R. § 206.125 is not triggered as a result of their spouses' deaths."  (Def.'s SJ Mem. at

2.)  As such, no amendment or vacatur of the *Plunkett* judgment is appropriate.

Notwithstanding defendant's assurances that their mortgages are eligible for the HE,

plaintiffs argue that "the criteria HUD has imposed [in the Proposed Letter] are unfair and have

no basis in law."  (Pls.' Reply at 2.)  They ask this Court to "enter an Order rejecting HUD's

proposed restrictions on TID as contrary to law and requiring it to offer the deferral and

assignment remedy HUD previously stated it had no choice but to provide."  (*Id.* at 7.)

Defendant responds that the requirements laid out in the Proposed Letter are "consistent with

HUD's 'normal' requirements for accepting assignment of HECMs" and with "its prior

representations to the Court."  (Def.'s Surreply at 1-2.)

It is important to emphasize that this Court's present task is a limited one.  The only

question before it is whether the *Plunkett* decision should be amended or vacated in light of

extraordinary circumstances or fraud.  This is not a review of the merits of the Proposed Letter

itself.  *See* 5 U.S.C. § 706.  The Court will accordingly confine its analysis to the question of

whether defendant's present position, as set forth in the Proposed Letter, is so inconsistent with

its previous representations as to evidence fraud.

Plaintiffs first object to a clause in the Proposed Letter stating that "in no case will HUD pay a claim upon assignment in excess of the [maximum claim amount] as calculated pursuant to 24 C.F.R. § 206.129." (Proposed Letter at 6.)  Plaintiffs assert that this language is inconsistent with 24 C.F.R. § 206.107(a)(1), which gives mortgagees "the option of assigning the mortgage to the Secretary if the mortgage balance is equal to or greater than 98 percent of the maximum claim amount."  This regulation, however, simply specifies a condition that must be satisfied for a mortgage to be eligible for assignment to HUD; it says nothing about the *amount* that mortgagees will be paid when they assign the mortgage.  When a mortgagee assigns a mortgage to HUD, the mortgagee may "file its claim for the payment of the insurance benefits." *Id.* § 206.127(c).  HUD's regulations spell out in great detail the amount of payment due upon assignment, *see id.* § 206.129(e)(1), but the payment to the mortgagee is capped at the maximum claim amount.  *See id.* § 206.129(b) ("In no case may the claim paid under this subpart exceed the maximum claim amount.").  Plaintiffs point to no other statements made by HUD indicating that payment upon assignment would not be so limited.  HUD's cap on payment in the Proposed Letter, therefore, is not inconsistent with its prior representations.

Plaintiffs' next objection is that, under the HE, the mortgage's due and payable status would merely be "deferred."  (*See* Pls.' Reply at 4.)  Plaintiffs assert that "HUD has previously stated that Plaintiffs' mortgages are *not* due and payable under § 206.27(c)(1) or (2)."  (*Id.*)  Plaintiffs are correct that the language of HUD's letter does frame the HE as a deferral of due-and-payable status.  (*See* Proposed Letter at 1 ("Alternatively, you may elect one of two amendments to the contract of insurance to provide for a deferral of a due and payable status as a result of the death of the last surviving mortgagor – the [MOE] or the [HE] . . . .").)  But the Court can find nothing in HUD's past briefing in which it represented that the mortgages would

be "not due and payable" rather than "deferred."  More to the point, plaintiffs have not explained

why this semantic distinction results in any meaningful difference.  Even though the due-and-

payable status is merely "deferred," the Proposed Letter makes clear that plaintiffs' mortgagees

may hold the mortgages as long as those mortgages do not become due and payable for a reason

other than the death of plaintiffs' spouses.  (*See* Proposed Letter at 4.)  This is precisely what

defendant stated in its previous briefing.    (Def.'s Reply in Further Supp. of his Mot. to Dismiss

or, in the Alternative, for Summ. J. [ECF No. 44] at 4 ("Thus, as far as HUD is concerned, the

mortgagees may hold plaintiffs' spouses' mortgages unless and until some other event of default

occurs.").)

Plaintiffs do argue that "[b]ecause HUD now claims the mortgages *are* due and payable,

HUD now requires spouses to cure any defaults within 30 days of the mortgagee's election."

(Pls.' Reply at 4.)  This objection is a reference to the requirement in the Proposed Letter that,

"[i]n order for a HECM loan to be eligible for the HE, within 30 calendar days of the

mortgagee's election to proceed under the HE," four criteria must be met, including that "the

loan must not be eligible to be called due and payable for any reason . . . other than the death of

the borrower's spouse."  (Proposed Letter at 4.)  As an initial matter, this 30-day window has

nothing to do with the "deferred" status of the loan: it is simply the amount of time HUD has

provided plaintiffs to cure any remaining defects should their mortgagees wish to proceed under

the HE.  And the 30-day window is not contrary to any previous representations by HUD.

Indeed, it tracks HUD's regulations precisely.  After a mortgage comes due and payable for any

of the reasons listed in 24 C.F.R. § 206.27(c)(1) or (2), and the mortgagee notifies HUD and the

mortgagor, "[t]he mortgagor shall have *30 days* in which to [pay the mortgage balance, sell the

property, provide the mortgagee with a deed in lieu of foreclosure], or *correct the matter which*

*resulted in the mortgage coming due and payable*, before a foreclosure proceeding is begun." 24 C.F.R. § 206.125(a)(2) (emphasis added).  Just as a normal mortgagor would be given 30 days to cure a default after being notified by her bank, so too are plaintiffs given 30 days to cure after the their banks elect to proceed under the HE.  The imposition of a 30-day window does not evidence fraud on the part of defendant.

Relatedly, plaintiffs complain that, pursuant to the Proposed Letter, "[i]f a mortgage default occurs after the HE, HUD has given mortgagees permission 'as of the date of [such a default] to proceed with foreclosure without delay . . . .'"  (Pls.' Reply at 4 (alteration in original) (quoting Proposed Letter at 4).)  The complete provision in the original Proposed Letter read as follows: "Should the HECM become eligible to be called due and payable for any reason thereafter, the mortgagee has the Department's consent as of the date of such event to proceed with foreclosure without delay and such a HECM is not eligible for loan assignment."  (Proposed Letter at 4.)  The Court agrees with plaintiffs that this requirement could be interpreted to be inconsistent with 24 C.F.R. § 206.125(a)(2).  To clarify this issue, the Court, via e-mail to the parties, requested that defendant either modify the Proposed Letter to provide plaintiffs an opportunity to cure or file a supplemental brief explaining why such a modification is not necessary.  Defendant subsequently modified the above-quoted sentence to read as follows: "Should the HECM become eligible to be called due and payable for any reason thereafter, the mortgagee has the Department's approval as of the date of such event to call the loan due and payable and thereafter shall provide a period of 30 days to cure the event of default. Unless such cure occurs during that period, the HECM is not eligible for assignment and the mortgagee shall proceed with foreclosure without delay."  (Revised Proposed FHA Letter [ECF 56-1] at 4.)  The Court finds that this modification satisfies plaintiffs' objection.

Plaintiffs' next argument is that "[n]one of the regulations listing the 'normal prerequisites for assignment' justify the time constraints HUD now imposes for opting into the TID and complying with its conditions." (Pls.' Reply at 5.)  As explained above, though, HUD's regulations do impose a 30-day time limit for curing defaults.  With respect to the deadline for plaintiffs' mortgagees to opt into the HE, plaintiffs are, of course, correct that the extant regulations do not cover this *sui generis* situation.  However, neither are the time limits imposed in the Proposed Letter contrary to any previous statements made by defendant.  Moreover, HUD has clarified that it will extend the deadlines in the Proposed Letter based on when the letters are sent. (*See* Def.'s Surreply at 4 n.2 ("In determining the final dates to be included in the letter, HUD will, at a minimum, provide each mortgagee with seven days to notify HUD of its decision with regard to each mortgage and a *further* thirty days within which any tax and insurance default may be cured.").)  The Court cannot conclude that any of these deadlines run afoul of HUD's past representations or existing regulations.

Next, plaintiffs claim that "nothing in the normal prerequisite regulations justifies HUD's insistence that it can only accept assignment of a mortgage on which no invalidating claims have been lodged, or that such claims have been judicially resolved in favor of the mortgagee." (Pls.' Reply at 5.)  Plaintiffs' objection refers to the following requirement for HE assignment: "[T]here can be no outstanding asserted claims by the borrower's estate, the Non-Borrowing Spouse, or any heir that could invalidate the HECM, or any such claims must have been judicially resolved in favor of the mortgagee." (Proposed Letter at 4.)  Plaintiffs acknowledge, however, that HUD's regulations condition mortgage assignment on the mortgagee's certification that "[t]here are no offsets or counterclaims thereto and the mortgagee has a good right to assign." 24 C.F.R. § 203.353.  Moreover, for the mortgage to be assignable, "title to the

property securing the mortgage [must be] good and marketable." *Id.* § 206.107(a)(1)(v).

Plaintiffs fail to explain why these two provisions would not encompass the requirement

imposed by the Proposed Letter.  Indeed, the Letter's requirement appears narrower than the

restrictions spelled out in 24 C.F.R. § 203.353, and it is not indicative of fraud or misconduct on

HUD's part.

Plaintiffs' final argument is that the Proposed Letter "drastically alter[s] [HUD's]

determination on remand by forcing the mortgagee to irrevocably opt for the MOE within one

month, after which Plaintiffs must meet all qualifications by December 10, 201[4]."  (Pls.' Reply

at 6-7.)  As with the HE, the Proposed Letter requires mortgagees to opt into the MOE by a set

deadline and gives the non-borrowing spouses 30 days after the mortgagee's election to ensure

that the mortgage complies with the terms of the Letter.  (*See* Proposed Letter 1-2.)  While

plaintiffs assert that "HUD argued on summary judgment that the MOE was not arbitrary and

capricious, in part, because it imposed no restrictions on when the lender could exercise the

option," (Pls.' Reply at 6), they provide no citation for this proposition, and this Court cannot

locate any statement by HUD promising that the MOE would be available indefinitely.  And, as

explained above, the time provided to cure any default is consistent with HUD's regulations.  *See*

24 C.F.R. § 206.125(a)(2).  The Court therefore finds that the time limits imposed on the MOE

do not run so counter to HUD's regulations or to its prior representations as to evidence fraud.

## CONCLUSION

The Court concludes that plaintiffs have failed to put forward sufficient evidence to prove

that defendant engaged in fraud or that there exist extraordinary circumstances that would

warrant altering or amending this Court's prior judgment.  The Court reaches this conclusion

based on HUD's policy as set forth in its Proposed Letter, as amended, and on the understanding

that this Letter will be distributed to plaintiffs' mortgagees.  Therefore, it is hereby **ORDERED**

that plaintiffs' motion for relief under Rule 59(e) or, alternatively, Rule 60(b) [ECF No. 49] is

**DENIED**.

/s/   *Ellen Segal Huvelle*
ELLEN SEGAL HUVELLE
United States District Judge

Date:   November 24, 2014